## Case No. 11,528.

RAFT OF SPARS.

[Abb. Adm. 291.] [1]

District Court, S. D. New York. May, 1848.

ADMIRALTY—STAY OF ACTION—SALVAGE.

1. A court of admiralty will not order a salvage suit to be set aside or to be stayed because

[1] [Reported by Abbott Bros.]

there is pending in a court of law an action of replevin for the salved property, brought by the owner against the salvor, and in which the validity of the salvor's lien upon the property may be determined.

[Cited in Studley v. Baker, Case No. 13,559; Malty v. Steam Derrick Boat, Id. 9,000.]

[2. Cited in The Cheeseman v. Two Ferry-Boats, Case No. 2,633, to the point that salvage services are not limited to a vessel or cargo, but extend to any valuable property in peril, saved on the sea or on other navigable waters.]

This was a libel in rem, filed by John S. Keteltas, against a certain raft of spars, to recover compensation for salvage services. The facts out of which the action arose were, in brief, as follows: On April 8, 1848, the libellant observed the raft in question, which consisted of sixteen spars, to be adrift below the Narrows and floating out to sea. He procured the assistance of two or three other persons, and the whole party, by means of boats, stopped the raft, and towed it to the Staten Island shore. On the 9th of April, the libellant gave notice to one of the coroners of Richmond county of his having found the raft, and requested him to take possession of it, and to publish notice of its having been recovered, for the benefit of the owners. On the 10th of April, the coroner caused an advertisement to be published in the New York Commercial Advertiser, stating that the raft had been found and was in his possession. It was claimed by the owner, who offered the libellant $30 for his services rendered. This sum the latter refused to accept. On the 14th of April, the alleged owner served on the present libellant a writ of replevin, issued out of the supreme court of the state of New York, to procure the delivery of the raft to himself—he having previously executed, in due form, the bond required by the then existing law of the state. The libellant, at about the same time, instituted this suit for salvage, in his own name, and caused the raft to be attached in his favor by a deputy marshal of the United States. The persons associated with the libellant in salving the raft, thereupon came in by petition, asking that they might be made parties to the suit with the libellant, and that salvage compensation might be awarded to them also. The owner of the raft, George W. King, intervened in the suit by claim and answer; and he now moved that the action in the district court be wholly set aside; or that, if he was not entitled to that relief, then that all proceedings in it be stayed until the replevin suit in the state court be determined. Other circumstances involved in the case, but not important to this motion, are stated in the report of the decision upon the merits, made in February, 1849, and reported [Case No. 11,529].

Martin & Smith, for the motion.

J. B. Purroy, opposed.

BETTS, District Judge. The depositions upon which the motion now before the court

is founded, attempt to show that the timber had been wrongfully if not feloniously taken from the possession of the claimant; and they make suggestions tending to charge the libellant with an improper acquisition or possession of the property.

The testimony upon the other side, however, wholly displaces, as far as this proceeding is concerned, any pretence for the imputation of dishonest or improper conduct on the part of the libellant, in obtaining possession of the timber which forms the subject of the suit; and. accordingly, the motion must be decided upon the assumption that the libellant came bona fide into possession of the raft by finding it adrift at sea, and by a laudable effort to save it from being lost.

Accordingly the single point which arises for decision upon the motion is, whether this court will. either as matter of right to the claimant, or by comity towards the municipal courts, cause the prosecution of this action to surcease until the action at law in the state court is determined.

It is plain, from the course of decision in the supreme court of New York (Bowne v. Joy, 9 Johns. 221; Walsh v. Durkin, 12 Johns. 99), and of the circuit court of the First circuit,—Certain Logs of Mahogany [Case No. 2,559],—that the pendency of the replevin suit in the state court ought not to be regarded as a legal bar which could be pleaded in abatement to the libel in rem in this court. Not only are the jurisdictions. so far as concerns the question under consideration, foreign to each other, but an action in replevin and an attachment in rem. to enforce a lien by the process of an admiralty court, are proceedings which are in their nature distinct, although the property which forms the subject of each proceeding may be the same. The matter triable in a replevin suit must relate to the taking, or to the better title or right of possession of the particular parties to the suit in the property in question. 2 Rev. St. 522, §§ 1, 53, 54, 64. In the present case, it must be limited to the question, whether the libellant has acquired an incumbrance upon the raft against all the world in the character of salvor. The validity of the lien may become an essential inquiry in the replevin suit as well as under the attachment in this court; so that in the former cause, the court of law, in adjudicating upon the claim of the plaintiff to the possession of the raft, may incidentally decide upon the right of the defendant to salvage compensation. This, however, will not necessarily be the case. The right of possession may very possibly be determined without drawing in question the validity of the asserted lien. For instance, inasmuch as at common law the right of possession of chattels, by virtue of a lien, depends on a continued occupancy and holding of the thing to which it is claimed the lien attaches, and as any voluntary relinquishment of the ac-

tual possession. however temporary, may have the effect of discharging and extinguishing the lien,—Meany v. Head [Case No. 9,379]; Ex parte Foster [Id. 4,960]; Story, Bailm. § 440, 588,—the court of law might be bound to adjudge the property in suit to the plaintiff in the action of replevin, in case the defendant failed to prove an uninterrupted holding of it, under his salvage incumbrance. This would leave the actual right of the salvors wholly out of view.

I do not say that the supreme court cannot shape the issues in the replevin suit so as to determine the question of salvage. and so as also to settle between the co-salvors themselves the proportions of the whole sum awarded, which may be due to each of them respectively, or that they cannot compel the payment of what may be found due, by means of the replevin bond; but only that it is by no means clear that these things must and will be settled in the action at law. It is manifest, however, that the procedure requisite to accomplish those objects would be but little in consonance with the course of practice in law courts, and would be an awkward and ungainly mode of dealing with the interests of salvors.

There are several cases to be found in the reports of the courts of this state which evince the difficulty of rendering a judgment in a replevin suit which shall coincide fully with the true rights and equities of the parties. See Bemus v. Beekman, 3 Wend. 667; Rogers v. Arnold, 12 Wend. 32; Pierce v. Van Dyke, 6 Hill, 613; Anstice v. Holmes, 3 Denio, 244.

Moreover, even if the questions to be tried in the two suits were identical. the difference between the remedies awarded and the fact that the remedy in admiralty by attachment of the property itself is more sure and expeditious than that given at law, would operate strongly in inducing the court not to exercise its discretionary power over the suit in this court, in such manner. as to give a preference to the more dilatory and uncertain procedure at law.

And it is manifest that the difference indicated by Judge Story, in the case already cited,—Certain Logs of Mahogany [supra].—between the parties to the two actions, would deter the court from arresting the one in rem. In addition to the reasons governing that case, there should, in the present case. be added the consideration that the several libellants may have interests in the suit which are wholly different. It is the daily business of admiralty courts to adjudicate between salvors themselves the appropriation of the salvage reward, in the action instituted against the property salved; and salvors are not driven to separate suits for the purpose of procuring such adjustments. This end could not be attained with any convenience or celerity in a suit in replevin. The direct issues could hardly embrace the questions arising between the salvors; and a suit

upon the bond given to secure the damages sustained by the defendant, even if his services could be in this manner fully remunerated, would scracely avail to the benefit of the co-salvors, who are not parties to the record in the replevin suit.

Nor is the fact to be lost sight of, in estimating the importance of these differences in the two proceedings, that even if in the replevin suit a judgment might be given determining the right of the salvage reward, and the amount to be allowed therefor, such judgment must, in conformity to the course of law courts, be rendered solely in favor of the defendant in the action, he alone appearing on the record to maintain that interest. The proceeds of any recovery must go into his hands, leaving his co-salvors to the inconvenience of separate actions against him for the recovery of their shares. The admiralty court, on the other hand, acts directly upon the property and its proceeds, and administers their distribution according to the rights of all parties, whether litigants in the original proceedings or not.

Again: In a replevin suit against salvors, they may be drawn into controversies between outside parties on conflicting claims to the property saved, or to the true right to its possession, in none of which matters they have any interest. Their right attaches to the property saved, irrespective of the ownership of it, or to the possessory interests of others. To determine and satisfy their right does not involve the necessity of inquiring into the title or privileges of other parties, and salvors ought not to be compelled to forego the peculiar and expeditious remedy allowed them in admiralty, and to abide the result of protracted and entangled litigation with others as to the possession of or title to the property subject to their incumbrance.

Upon these considerations, I do not regard the claimant as entitled to the interposition for which he asks; and am equally clear that to grant the application considered as addressed to the discretion of the court, upon grounds of comity or otherwise, would be inexpedient, and, indeed, unjust. The papers before me do not show that there is any pending conflict of jurisdiction over the subject-matter, between the state court and this court. The libellant has no manual or positive possession of the timber given him by the process of this court, under which he resists or thwarts the writ of replevin issued by the state court. The question, so far, is merely a speculative one, whether the arrest under the law writ or the attachment shall be the effective one; and until the opposing action of the marshal and sheriff, under those processes, shall make it necessary to determine that point, this court will forbear intermeddling with it, and leave the action here to take the usual course. The motion to supersede or stay the action brought in this court is accordingly denied. The costs of the motion are to abide the decision of

the cause upon the merits. Order accordingly.

[The libelants were allowed $50. Case No. 11,529.]